IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GALDERMA LABORATORIES, L.P.** § <br> 14501 North Freeway § <br> Fort Worth, TX 76177 § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **HOSSEIN ZAMANI** § <br> 2305 Chain Bridge Rd., NW § <br> Washington, DC 20016 § <br> § <br> Defendant. § | CIVIL ACTION NO.: 1:21-CV-00132 <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Galderma Laboratories, L.P. ("Galderma") files its Original Complaint asserting claims against Defendant Hossein Zamani ("Zamani") and respectfully states as follows:

### I.
### OVERVIEW

1. Galderma is plagued by pharmacists that, for the last several years, have engaged in healthcare scams by taking advantage of Galderma's CareConnect program, which is intended to allow patients to purchase Galderma's prescription products for little or no co-pay. In connection with this program, certain pharmacists have been submitting wholly fraudulent reimbursement claims for Galderma's prescription products—products the pharmacists never filled and dispensed and yet the pharmacists bilked Galderma into paying.[1] Zamani is among the pharmacists engaged in such healthcare fraud against Galderma.

---

[1] https://www.clickondetroit.com/news/local/2019/12/19/10-people-accused-in-massive-46m-co-pay-fraud-scheme-involving-26-pharmacies-around-metro-detroit/.

## II.
## PARTIES

2. Plaintiff Galderma Laboratories, L.P. is a Texas limited partnership with its principal place of business at 14501 North Freeway, Fort Worth, Texas 76177. The citizenship of a limited partnership is determined by the citizenship of each partner of the entity. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). Galderma Laboratories, L.P.'s partners are Galderma Limited, LLC and Galderma General, LLC. Both Galderma Limited, LLC and Galderma General, LLC are incorporated and registered do business in Delaware with a principal place of business is 14501 North Freeway, Fort Worth, Texas 76177. Galderma Limited, LLC and Galderma General, LLC are not incorporated in Maryland. The citizenship of a limited liability company is also determined by the citizenship of each member of the entity. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Galderma Services, Inc. is the sole member of both Galderma Limited, LLC and Galderma General, LLC. A corporation is considered a citizen of (a) every state where it is incorporated; and (b) the state where it has its principal place of business. 28 USC § 1332(c)(1). Galderma Services, Inc. is a corporation incorporated and registered to do business in Delaware with a principal place of business at 14501 North Freeway, Fort Worth, Texas 76177. Galderma Services, Inc. is not incorporated in Maryland.

3. Defendant Hossein Zamani is a resident and citizen of the District of Columbia and can be personally served at 2305 Chain Bridge Road, NW, Washington D.C. 20016 or wherever Zamani may be found.

## III.
## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties' citizenships are diverse.

5.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Zamani is a resident of the District of Columbia.

## IV.
## BACKGROUND FACTS

**A.     Galderma and its CareConnect Card.**

6.     Galderma—founded in 1981—is a skin care company located in Fort Worth, Texas whose mission is aimed at enhancing the quality of people's lives by focusing on science-based solutions for skin health. Galderma manufactures and sells both over the counter and prescription products.

7.     In order to better serve patients using its prescription products, Galderma created the Program that offers the Galderma® CareConnect Patient Savings Card ("CareConnect Card") that allows uninsured and commercially insured patients to purchase Galderma's products for little or no co-pay at participating pharmacies.[2]

8.     The CareConnect Card can be used for one or more Galderma prescription products. When a patient presents his or her prescription for the Galderma product, insurance (if any) and the CareConnect Card, the pharmacist dispenses the Galderma product to the patient. Upon dispensing the Galderma product to the patient, the patient pays the pharmacy a discounted co-pay set by the patient's insurance provider, if any, and the Program's terms and conditions. The pharmacy may then seek reimbursement of the discounted co-pay amount from the insurance provider (if any).  If any unreimbursed amount remains, the pharmacy may then seek reimbursement from Galderma. Thus, the amount of reimbursement the pharmacy may seek from Galderma is the difference between the cost the pharmacy purchased the Galderma product for

---

[2]  The discounted pricing available to patients who use CareConnect Card is available on the CareConnect website at https://www.galdermacc.com/pricing-information.

less the reimbursement it receives from the insurance company and the co-pay paid by the patient. The average reimbursement varies—because the patient may be uninsured or insured—but can exceed $400 for a single prescription. The CareConnect Card may not be combined with any savings, discount, free trial, or other similar offer, like a GoodRx® card, for the same prescription.

9. Every pharmacist that participates in the Program and/or uses the CareConnect Card agrees to be bound by the Program's terms and conditions that include program details, rules, pharmacist instructions, and forum selection and choice of law provisions (the "<u>Terms and Conditions</u>").[3]

**B.    Defendant's relationship with Galderma.**

10. Zamani owned and was at all relevant times the supervising pharmacist of Germantown Professional Pharmacy & Compounding (the "<u>Pharmacy</u>"), which was a pharmacy based in Germantown, Maryland.

11. Zamani purchased and sold, among other things, Galderma products. In connection with those sales, Zamani participated in the Program by using the CareConnect Card and submitting reimbursement claims to Galderma's third-party administrator of the Program for Galderma to pay. Accordingly, Zamani agreed to and accepted the Program's Terms and Conditions.

12. With every reimbursement claim, Zamani represented to Galderma that the following occurred: (a) a valid prescription for a Galderma prescription product was received; (b) the patient and/or Zamani used the CareConnect Card; (c) the Galderma product was covered by the CareConnect Card; (d) the patient's insurance was adjudicated and the co-pay was collected

---

[3] The CareConnect Terms and Conditions available at:
https://www.galdermacc.com/sites/default/files/pdf/TermsConditions.pdf.

from the patient; and (e) Zamani oversaw the filling and dispensing of the prescribed Galderma product to the patient. The instructions on the CareConnect Card provide that before seeking reimbursement from Galderma, Zamani was required to submit the prescription to insurance:



13. Every single pharmacy in Maryland must be under the direct charge of a supervising pharmacist. These supervising pharmacists have direct control over the affairs of the pharmacy. All supervising pharmacists must be licensed by the Maryland Pharmacy Board, and they have ultimate responsibility for the operations of the pharmacies they oversee. Accordingly, Zamani was essential for the operation of the Pharmacy and had extensive responsibilities and duties as the supervising pharmacist, charged by law with knowledge of what prescriptions were

being filled and what products were being dispensed. Zamani is personally liable for his wrongful conduct.

## C. Defendant's fraudulent scheme to steal money from Galderma by abusing the terms and conditions of the CareConnect Card.

14. Since January 1, 2017, Zamani has participated in the Program. Zamani submitted approximately 7,568 claims against Galderma's CareConnect Card. However, Zamani only purchased approximately 613 corresponding Galderma products to dispense. In other words, Zamani submitted approximately 6,955 claims for Galderma products that he did not actually purchase and dispense to patients (the "False Claims").

15. Galderma paid for every False Claim, incurred a transaction fee for every False Claim from Galderma's third-party administrator of the Program, and incurred sales tax charges despite no corresponding sale.

16. Galderma also paid Zamani a higher reimbursement rate than similarly situated pharmacies because he would either fraudulently or negligently misrepresent the reimbursement amounts due by:

- failing to run the patient's insurance;
- manipulating the amount of insurance reimbursement; and/or
- running the CareConnect Card with another savings, discount, free trial, or other similar offer, like a GoodRx® card, for the same prescription.

17. On or around September 27, 2019, Galderma requested that Zamani validate both the purchases of Galderma products between January 1, 2017 to August 31, 2019 and address any anomalies Galderma was seeing in the Claims. Zamani ignored this request and closed the Pharmacy. Accordingly, Galderma was forced to file suit.

## V.
## CAUSES OF ACTION[4]

**A.    Fraud**

18.    Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

19.    Zamani made misrepresentations to Galderma. Each time a Claim was submitted, Zamani represented to Galderma the following occurred: (a) Zamani received a valid prescription for a Galderma prescription product; (b) the patient and/or Zamani used the CareConnect Card; (c) the Galderma product was covered by the CareConnect Card; (d) Zamani ran the patient's insurance and collected any co-pay from the patient; and (e) Zamani, as a licensed pharmacist, filled and dispensed the prescribed Galderma product to the patient. Zamani made approximately 6,955 Claims that have no actual purchase of Galderma products associated with them—they were fraudulent. As the supervising pharmacist, Zamani was one of the parties responsible for making and/or supervising the submission of these False Claims.

20.    Zamani also received a higher reimbursement rate under the Program when compared to other similarly situated pharmacies in Maryland by failing to run the patient's insurance, manipulating the amount of insurance coverage and/or running the CareConnect Card with another savings, discount, free trial, or other similar offer, like a GoodRx® card, for the same prescription.

21.    When Zamani made these misrepresentations to Galderma (through McKesson, Galderma's administrator of the CareConnect Card program), Zamani knew the representations were false because he did not actually purchase the prescribed Galderma products; indeed, with

---

[4] To the extent necessary, Galderma pleads and asserts each of its causes of action in the alternative.

the False Claims, Zamani did not actually dispense the prescribed Galderma product to any patients. Zamani made the misrepresentations with the intent that Galderma act on them.

22. Each of these misrepresentations were material to Galderma's decision to reimburse Zamani under its Program. Galderma relied on these misrepresentations and acted on these misrepresentations when it paid Zamani for the False Claims made under the CareConnect Card. Galderma never would have paid Zamani on the False Claims had it known that he was not actually dispensing the prescribed Galderma products, not running the patient's insurance before seeking reimbursement, and/or misrepresenting the insurance co-pay.

23. Zamani's fraud injured Galderma which has incurred damages in excess of this Court's minimum jurisdictional amount.

24. Further, because Zamani intentionally, willfully, wantonly, maliciously, and without justification or excuse committed fraud against Galderma, Galderma is also entitled to recover exemplary damages from him in an amount to be determined by the trier of fact.

**B.    Negligent Misrepresentation (in the Alternative to Fraud)**

25. Galderma incorporates the foregoing paragraphs as if fully set forth herein.

26. Zamani, as a participant in Galderma's CareConnect program, owed a duty of care to Galderma.  Specifically, Zamani was obligated to ensure that he only sought reimbursement of the difference between the cost the Pharmacy purchased the Galderma products for less the reimbursements the Pharmacy received from any relevant insurance providers and the co-pays paid by the relevant patients.

27. In a material breach of his duty owed to Galderma, Zamani negligently misrepresented, and indeed negligently misstated, the reimbursements he was owed under Galderma's CareConnect program.

28. For example, Zamani negligently misrepresented that approximately 6,955 claims were associated with an actual purchase of a Galderma product, when they were not. Zamani did so by submitting reimbursement requests to Galderma that contained material misrepresentations and misstatements.

29. When Zamani submitted those materially incorrect reimbursement requests to Galderma, he did so knowing that they were false (or at least he should have known they were false), and he did so knowing (or at least anticipating) that Galderma would rely on those requests and issue him payments that he was not owed.

30. Each of these misrepresentations were material to Galderma's decision to reimburse Zamani under its CareConnect program for amounts Zamani was not owed. Indeed, Galderma reasonably relied on these misrepresentations and acted on these misrepresentations when it paid Zamani for the False Claims made under the CareConnect program. Galderma never would have paid Zamani on the False Claims had it known that he was not dispensing the prescribed Galderma products, not running the patient's insurance before seeking reimbursement, and/or misrepresenting the insurance co-pay.

31. Zamani's misrepresentations, which were at least negligently made, injured Galderma in a monetary amount that is excess of this Court's minimum jurisdictional amount. Zamani is liable for that amount.

**C.     Breach of CareConnect Card's Terms and Conditions.**

32. Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

33. The Program's Terms and Conditions is a valid and enforceable contract. By using the CareConnect Card and seeking reimbursement from Galderma, Zamani agreed to be bound by this contract. To make a valid reimbursement claim using the CareConnect Card, Zamani had to

(1) receive a valid prescription for a Galderma product from a commercially insured or uninsured patient; (2) run the patient's insurance, if any; (3) oversee filling the prescription and dispensing the prescribed Galderma product; and (4) collect the required co-pay from the patient.

34. Zamani breached the Program's Terms and Conditions by, among other things, submitting False Claims. Specifically, Zamani could not have filled prescriptions for Galderma products if he did not purchase the products to dispense. But Zamani wrongfully submitted reimbursement claims nonetheless seeking money for a product he never purchased from any wholesaler or supplier. Zamani further failed to run patients' insurance, manipulated the amount of insurance coverage and/or ran the CareConnect Card with another savings, discount, free trial, or other similar offer, like a GoodRx® card, for the same prescription, in direct breach of the Terms and Conditions.

35. Zamani's breach of the CareConnect Card's Terms and Conditions have caused harm to Galderma. Galderma seeks actual damages in an amount and of a character within this Court's jurisdiction, plus pre-judgment and post-judgment interest in the maximum amount allowed by law.

**D.    Money Had and Received.**

36. Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

37. Zamani submitted False Claims under Galderma's CareConnect Card and received monies from Galderma for those False Claims. The benefit Zamani received was obtained by taking advantage of Galderma and its free CareConnect Card program. Zamani has unjustly enriched himself at Galderma's expense and, as a result, holds money that, in equity and good conscience, belongs to Galderma.

38. Accordingly, Galderma has suffered damages. Based on the fundamental principles of justice, equity, and good conscience, Galderma seeks actual damages in an amount and of a character within this Court's jurisdiction, plus pre-judgment and post-judgment interest in the maximum amount allowed by law.

## VI.
## CONDITIONS PRECEDENT

39. All conditions precedent to Galderma's claims for relief have been performed, have occurred, and/or have been waived.

## VII.
## PRAYER

THEREFORE, Galderma asks that this Court set this matter for trial and upon trial enter judgment in its favor, and against Zamani, awarding Galderma all direct and consequential damages; punitive damages; its costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter; pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and granting Galderma such other and further relief, general or special, as this Court may deem just and proper.

*     *     *

Dated: January 15, 2021

Respectfully submitted,

By: /s/ Greg Van Houten
    Greg Van Houten [Bar No. 1032731]
    HAYNES AND BOONE, LLP
    800 17th Street NW, Suite 500
    Washington, DC 20006
    Telephone: (202) 654-4562
    Facsimile: (202) 654-4256
    greg.vanhouten@haynesboone.com

    -and-

    David J. Drez III*
    Schyler Parker*
    WICK PHILLIPS GOULD & MARTIN LLP
    100 Throckmorton Street, Suite 1500
    Fort Worth, Texas 76102
    Telephone: (817) 332-7788
    Facsimile: (817) 332-7789
    david.drez@wickphillips.com
    schyler.parker@wickphillips.com
    *Pro hac vice applications to be submitted

**ATTORNEYS FOR PLAINTIFF
GALDERMA LABORATORIES, L.P.**